**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**Beckley Division**

**MARFORK COAL COMPANY, INC., a**
**West Virginia corporation,**

      **Plaintiff,**

**v.**

                              **CIVIL ACTION NO. 5:10-cv-0069**

**DAVID AARON SMITH, AMBER NITCHMAN,**
**ERIC BLEVINS, JOSHUA FRANCISCO GRAUPERA**
**and ISABELLE ROZENDAAL,**

      **Defendants.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

Plaintiff Marfork Coal Company, Inc. ("Marfork" or "Plaintiff"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, submits this memorandum in support of its motion for a temporary restraining order and preliminary injunction against the above-named Defendants. All Defendants have trespassed on Marfork's property and three remain on the property and have refused repeated demands that they leave the property.

Defendants have no defense to their knowing, intentional and calculated trespass on Marfork's Beetree Surface Mine beginning on January 21, 2010 (the "January 21, 2010 trespass"). Defendants' trespass was designed to tortiously and unlawfully stop the coal mining operations of Marfork, and thereby carry out and draw attention to Defendants' professed "cause" of abolishing mountaintop mining generally and mining operations of Marfork and other entities affiliated with A.T. Massey Coal Company, Inc. ("A.T. Massey") and Massey Energy Company ("Massey Energy") specifically.

The January 21, 2010 trespass amounts to nothing more than a reckless publicity stunt that placed Defendants, as well as Marfork's employees and contract personnel, in substantial

risk of severe physical injury or death, deprived Marfork of the exclusive possession and use of its mine property and unnecessarily interfered with Plaintiff's business relationships.

## I.  FACTUAL BACKGROUND[1]

Marfork is a corporation organized and existing under the laws of the State of West Virginia and engaged in the production and sale of coal, including extensive coal production operations at its Beetree Surface Mine in Boone County, West Virginia.   Marfork (and its Beetree Surface Mine property) is a corporate subsidiary entity of A.T. Massey, which is owned by Massey Energy.   Massey Energy is a publicly traded corporation organized and exiting the laws of the State of Delaware, and is the ultimate parent corporation of a number of affiliated, subsidiary corporations engaged in the production and sale of coal.

### A.      Marfork's Operations at the Beetree Surface Mine.

As part of its permitted operations at the Beetree Surface Mine property, Marfork possesses recognized interests in the surface rights of the property, including the rights of possession and use.   Marfork restricts access to the property to authorized personnel only, and the property is patrolled by Marfork's security personnel.   The property has limited, gated access points, all manned by security personnel of Marfork (and/or other corporate subsidiary entities of A.T. Massey and Massey Energy), and the property is posted with, among other things, "No Trespassing" signs.   In compliance with state and federal mining rules and regulations, Marfork provides all mining personnel at the Beetree Surface Mine property with the legally mandated safety training and equipment to ensure the safe performance of coal mining activities.

### B.      The January 21, 2010 Trespassers

All of the above-named Defendants are affiliated with the "environmentalist" groups Climate Ground Zero and Mountain Justice (and likely others) that are allied and which advocate

---

[1] The Verified Complaint filed by Plaintiff in Civil Action No. _____is incorporated herein by reference.

the abolition of mountaintop mining.  The January 21, 2010 trespass upon the Beetree Surface Mine property was perpetrated with the intent and hope of interfering with and ultimately ending the mining operations being conducted on Marfork's Beetree Surface Mine property and at other corporate entities affiliated with A.T. Massey and Massey Energy.

     **C.**       **The January 21, 2010 Trespass onto the Beetree Surface Mine**

On January 21, 2010, all Defendants (and yet unknown and uncertain others in active concert or participation with said Defendants) trespassed onto the Beetree Surface Mine property.  They proceeded to an area where Marfork was preparing to conduct blasting as a precursor to coal removal, which interfered with, and was intended to interfere, with coal production operations.  Three of the Defendants, David Aaron Smith, Amber Nitchman, and Eric Blevins, then climbed trees near the active mining area.  The other two Defendants, Joshua Francisco Graupera and Isabelle Rozendaal, remained on the ground in support of those in the trees.  Defendants in the trees then established a platform of some sort which allowed them to remain in the trees.  Defendants also hoisted supplies and other materials into the trees and unfurled banners declaring their opposition to Marfork's mining operation.  Defendants displayed banners with an anti-mountaintop mining slogans in close proximity to their platform.  To prevent injury to the trespassing Defendants and Plaintiff's employees and contract personnel, coal production activities in the area ceased – as a direct result of the physical assault on the property by Defendants.

Upon discovery of the January 21, 2010 trespass, representatives of Marfork informed the Defendants that they were trespassing on private property, advised them of the risks in trespassing on an active mine site, and asked them to leave.  Defendants refused to leave.  Eventually, the two Defendants who remained on the ground – Graupera and Rozendaal – were removed from the property by the West Virginia State Police and were charged with trespass and

3

conspiracy.  The three Defendants in the trees refused to vacate the trees (and the property) even at the order of the State Police.  Since that time, one of the three has come down from the trees and has been taken into custody by the West Virginia State Police.

Defendants (and/or others acting in concert or participating with them) videotaped and photographed their trespass and have posted the evidence of their criminal activities on Climate Ground Zero and Mountain Justice websites.)[2]

The manner in which the January 21, 2010 trespass was carried out, as well as the activities of Defendants once on the mine property, demonstrate the same pattern employed during the trespasses that are currently the subject of litigation in the Circuit Court of Raleigh County, West Virginia, before the Honorable Robert Burnside, and in the Circuit Court of Boone County, before the Honorable William Thompson.  To date, Defendants, those persons in active concert or participation with them (and/or others affiliated with Climate Ground Zero and/or Mountain Justice) have targeted mine properties affiliated with A.T. Massey and Massey Energy. In fact, Defendant Blevins (along with other protesters) was previously cited/arrested by the West Virginia State Police for a trespass on Marfork property on May 23, 2009.

## II. ARGUMENT

In light of Defendants' participation in an ongoing campaign of tortious and unlawful trespasses on mining properties affiliated with A.T. Massey and Massey Energy, including Marfork's Beetree Surface Mine property, Plaintiff is unquestionably entitled to a temporary restraining order and a subsequent preliminary injunction to enjoin Defendants, their officers, agents, servants, employees and attorneys, and those others who are in active concert or

---

[2] See http://www.climategroundzero.org and http://mountainjustice.org.

participation with them, from trespassing, until the opportunity for a trial on the merits of its claims.

### A.      Legal Standard

Although a District Court exercising diversity jurisdiction applies the law of the forum state on substantive matters, it applies federal law on questions of procedure.  Although there may be some disagreement among the Circuit Courts of Appeal, the Fourth Circuit has adopted the position that federal law controls the issuance of a temporary restraining order or preliminary injunction.

> Although the authorities are split concerning whether federal law or state law governs the issuance of a preliminary injunction in a diversity action, *see Kaiser Trading Co. v. Associated Metals and Minerals Corp.*, 321 F. Supp. 923, 931, n.14 (N.D.Cal.1970), this Court concludes that the better view is that federal law is controlling.  11 Wright and Miller, Federal Practice and Procedure, § 2943 (1973).

> Since Rule 65(a), F.R.Civ.P., governs the issuance of preliminary injunctions, it is clear that an important federal policy is involved when a litigant seeks such relief in a federal court.  In light of this important federal policy, federal law, not state law, should apply in a diversity action in which a preliminary injunction is sought. *Hanna v. Plumer*, 380 U.S. 460, 85 S. Ct. 1136, 14 L.Ed.2d 8 (1965).

*Federal Leasing, Inc. v. Underwriters at Lloyd's*, 487 F. Supp. 1248, 1260 (D. Md. 1980), aff'd 650 F.2d 495 (4th Cir.1981).  The leading treatise on federal practice and procedure provides the rationale behind this holding:

> [T]he application of the federal rule to requests for preliminary injunctions or temporary restraining orders would not impair state interests in any substantial way.  Orders under Rule 65(a) and Rule 65(b) are not final awards in any sense; they do not really compensate plaintiff or rectify his grievance and, because of their limited duration, do not permanently proscribe defendant's freedom of action.  Because they only afford temporary relief, there is little chance that the entry of an order under Rule 65(a) or Rule 65(b) ultimately will interfere seriously with the goals or policies of the state-created right that is being litigated and will be adjudicated in accordance with state substantive law.

11 Wright and Miller, Federal Practice and Procedure, § 2943 (2009).

Because federal law applies, the standard that this Court must consider in deciding whether to issue this temporary restraining order and subsequent preliminary injunction is the one established by the Fourth Circuit recent decision in *The Real Truth About Obama v. Federal Election Commission*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*").  In *Real Truth*, the Fourth Circuit found that the earlier standard for issuing a preliminary injunction established in *Blackwelder Furniture Co. of Statesville v. Selig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977), needed to be revised in light of and as set forth by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365 (2008).[3]  The Fourth Circuit replaced *Blackwelder*'s "flexible interplay" test which addressed four relevant factors, but that focused on the balance of the hardships between the parties, with a test which requires a plaintiff to satisfy all four relevant factors before preliminary injunctive relief could be issued.  The four parts of the test are: (1) that the plaintiff is likely to succeed on the merits; (2) that the plaintiff is likely to suffer irreparable harm in the absence of injunctive relief; (3) that the balance of the equities tips in the plaintiff's favor; and (4) than an injunction would be in the public interest.  *Real Truth*, 575 F.3d at 346-47 (and, note, these are the same four factors long considered in *Blackwelder*).

As is discussed further below, Marfork satisfies each part of the *Real Truth* test[4] and it is

---

[3] It is settled law that the standard for issuing a temporary restraining order is identical to that for issuing a preliminary injection.  *Moore v. Kempthorne*, 464 F.Supp.2d 519, 525 (E.D.Va. 2006).

[4] Marfork would also satisfy the standards for issuing a temporary restraining order in West Virginia state court.

> The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.

Syl. Pt. 2, Camden-Clark Memorial Hospital Corp. v. Turner, 212 W. Va. 752, 575 S.E.2d 362 (2002) (quoting Syl. Pt. 4, State ex rel. Donley v. Baker, 112 W. Va. 263, 164 S.E. 154 (1932)).

> To aid the trial court's "balancing inquiry," the Supreme Court of Appeals of West Virginia adopted the "flexible interplay" standard earlier developed by the United States Court of Appeals for the Fourth Circuit:
> > [u]nder the balance of hardship test the [lower] court must consider, in 'flexible interplay,' the following four factors in determining whether to issue a

appropriate for this Court to issue a temporary restraining order and a subsequent preliminary injunction. In the instant case, Plaintiff will suffer irreparable harm without a preliminary injunction. As the above-named Defendants have no legally recognized right to trespass onto the Beetree Surface Mine property – and no legally cognizable defense to the January 21, 2010 trespass – they will not be harmed by an injunction. The equities clearly favor Marfork. Plaintiff will unquestionably succeed on the merits of their claims, and the public interest weighs in favor of enjoining Defendants from breaking and continuing to break the law, recklessly endangering the health and safety of Marfork's employees and contract personnel (and Defendants themselves) and tortiously interfering with Plaintiff's private property and business operations.

### B.   Plaintiff Will be Irreparably Harmed Without a Temporary Restraining Order and Subsequent Preliminary Injunction

Plaintiff has suffered and, in the absence of a temporary restraining order and subsequent preliminary injunction will continue to suffer, irreparable harm. Any contention that irreparable harm cannot accompany a trespass on real property is baseless.

Irreparable injury, for purposes of equitable relief, arises when legal remedies are inadequate. Plaintiff is clearly without an adequate remedy at law. Irreparable harm to Plaintiff

---

preliminary injunction: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest.

Jefferson County Bd. of Educ. v. Jefferson County Educ. Ass'n., 183 W. Va. 15, 24, 393 S.E.2d 653, 662 (1990) (quoting Merrill Lynch, Pierce, Frenner & Smith, Inc. v. Bradley, 756 F.2d 1048 1054 (4th Cir. 1985)). Regarding the "flexible interplay" standard, "[t]he irreparable harm to the plaintiff and the harm to the defendant are the two most important factors." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991).

The West Virginia Supreme Court has not issued a ruling affirming or modifying the state preliminary injunction standard since the *Real Truth* decision, but assuming the rule discussed in this footnote is still in place; Marfork would be entitled to a temporary restraining order and subsequent preliminary injunction. As discussed in more detail below, Plaintiff will suffer great harm if Defendants' unlawful activities are not enjoined, but Defendants will suffer no harm. The other factors are essentially the same as the *Real Truth* test and Marfork clearly meets these requirements.

arises from the fact that Plaintiff's legitimate and protected rights to the possession and use of the Beetree Surface Mine property was invaded and continues to be invaded by the Defendants who continue to occupy trees on the property.  Interference with the exclusive possession and use of real property – in and of itself – is sufficient irreparable harm to warrant injunctive relief.

As clearly demonstrated by the recidivism of Defendant Blevins,[5] and by the acts of their cohorts affiliated with Climate Ground Zero and Mountain Justice, Defendants are part of a campaign targeting mine properties affiliated with A.T. Massey and Massey Energy, including Marfork's Beetree Surface Mine property, and have expressed their intent to continue to trespass in the future.[6]  The January 21, 2010 trespass has and, like the past trespasses on the property on Marfork and other properties affiliated with A.T. Massey and Massey Energy, each successive trespass will continue to interfere with Marfork's exclusive possession and use of the Beetree Surface Mine property.

Defendants, and their cohorts affiliated with Climate Ground Zero and Mountain Justice, have represented by their words and proven through their actions that they will not be deterred by the imposition of a monetary fine or the prospect of serving a jail sentence for their criminal conduct, but will continue to trespass on mining properties operated by Marfork and other entities affiliated with A.T. Massey and Massey Energy.  Requiring Marfork, which suffers and will continue to suffer irreparable harm as a result of Defendants' trespasses, to bring a new legal action for each subsequent trespass (or even to await the outcome of criminal prosecution –

---

[5] Defendant Blevins was cited/arrested by the West Virginia State Police for trespassing on May 23, 2009 at Marfork, near the Brushy Fork Impoundment in Raleigh County, West Virginia.
[6] The Defendants admitted as much in a press release available on Climate Ground Zero's website (climategroundzero.net/2010/01/treesit/ - "The sitters plan to remain in the trees as long as it takes to stop blasting on Coal River Mountain. Climate Ground Zero's action campaign, begun in February of last year, has kept up a sustained series of direct actions since that time continuing decades-long resistance to strip mining in Appalachia.")

which would not make Plaintiff whole and which has not deterred them in any event[7]), would in itself cause irreparable harm to Plaintiff.  See Wiles v. Wiles, 134 W. Va. 81, 58 S.E.2d 601 (1950) (stating that "where acts of trespass are constantly recurring and the resultant injury from each act would be very small in comparison with the expenses necessary in the prosecution of separate actions act law, relief in equity will be granted because of the inadequacy of the legal remedy").

By trespassing on an active mine site where blasting and mine operations are being conducted, Defendants interfered with the mining operations being conducted thereon, and they placed themselves and Marfork's employees and contract personnel at substantial risk of sustaining severe physical injury or death.  By remaining in trees near areas where blasting and other mining activities would be ongoing, they continue to interfere with Marfork's activities. Plaintiff is without an adequate remedy at law to prevent future trespasses because damages caused by future trespasses – the interference with Marfork' exclusive use and possession of the Beetree Surface Mine property and the attendant risk of severe physical injury and death to Marfork' employees and contract personnel – are irreparable and incapable of determination with any precision.

### C.    The Balance of the Equities Tips in Favor of Plaintiff

Defendants will not be – and cannot be – harmed by entry of a temporary restraining order or subsequent preliminary injunction until a trial on the merits of Marfork's claims.  Such relief only would prevents Defendants from (i) unlawfully and tortiously trespassing onto the Beetree Surface Mine property and other mining properties affiliated with A.T. Massey and Massey Energy, (ii) unlawfully and tortiously interfering with the coal production operations

---

[7] There have been multiple arrests, citations, and convictions of persons affiliated with Climate Ground Zero and other environmentalist groups and yet persons affiliated with this group continue to trespass upon property possessed by Marfork and other entities affiliated with A.T. Massey and Massey Energy.

being conducted thereon and Plaintiff's business relationships arising therefrom, and (iii) creating a potentially dangerous situation that subjects Defendants as well as Marfork's employees and contract personnel to substantial risk of sustaining severe physical injury or death.

Defendants – all of whom came from out of state to trespass on the Beetree Surface Mine property – would be restrained from conduct that is both tortious and criminal, and such relief would not inhibit them from advocating their message in a lawful manner, just not in a tortious and criminal manner on mine properties affiliated with A.T. Massey and Massey Energy. Defendants can not identify any legally-cognizable right to commit a future trespass or future interruption of permitted mining activities. In fact, Defendants possess no protectable interest in committing this ongoing trespasses or any future trespass, meaning that an injunction against this trespass and all future trespasses does no harm to Defendants, their officers, agents, servants, employees, and attorneys, or all those others who are in active concert or participation with any or all of them. Accordingly, Defendants would not be harmed by a temporary restraining order or subsequent preliminary injunction. As such, the balance of the equities clearly favors Marfork, which is merely trying to defend its right to use and enjoy its property in a lawful manner, over Defendants who are part of an ongoing campaign of illegal activity.

### D.      Plaintiff Will Prevail on the Merits

Marfork will prevail on the merits of the claims set forth in it Verified Complaint. Defendants have announced to whoever will listen that they have trespassed on the Beetree Surface Mine. Defendants have neither a recognized legal right to trespass onto the Beetree Surface Mine property nor a defense to the allegations contained in Plaintiff's Verified Complaint. There is no constitutional right to trespass to protest or publicize Marfork's mining

activities or the mining activities of other corporate entities affiliated with A. T. Massey and Massey Energy.  Plaintiff will likely prevail on the merits of their claims.

       **E.**       **The Public Interest Weighs in Favor of Granting Injunctive Relief**

       Granting a temporary restraining order and subsequent preliminary injunction will benefit the public interest.  It is clear from Defendants' course of conduct – publishing videos of their trespasses and advertising their cause in hopes of recruiting other individuals to trespass onto surface mine properties – that Defendants and those in active concert or participation with them plan to and will attempt to continue their campaign of trespasses on mine properties affiliated with A.T. Massey and Massey Energy.  In doing so, Defendants and those in active concert or participation with them have jeopardized and will continue to jeopardize the health, safety and well-being of themselves, Marfork's employees and contract personnel, and deprive Marfork and other corporate entities affiliated with A.T. Massey and Massey Energy of the exclusive possession and use of their mine properties.

       The public interest weighs in favor of injunctive relief pending a trial on the merits of Marfork's claims.  As Defendants have <u>no</u> legal interest or right to trespass on the Beetree Surface Mine property or mine properties affiliated with A.T. Massey and Massey Energy, and they have ample opportunity to redress their alleged grievances against mountaintop removal mining and corporate entities affiliated with A.T. Massey and Massey Energy without resorting to torious and criminal conduct.

       In addition, continuing trespasses require that the West Virginia State Police and other law enforcement authorities divert attention from other priorities to continually arrest or babysit Defendants and those in active concert or participation with them.  For all these reasons, the public interest favors the issuance of a temporary restraining order and subsequent preliminary injunction.

**F.      The Relief Requested by Plaintiff is Appropriate**

The relief sought by in Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (and contained in its [Proposed] Order Granting Temporary Restraining Order) is supported in the law.[8]   Accordingly, the Court has the authority to grant the relief requested, and the circumstances certainly warrant such relief.

**1.      Scope of the Requested Relief**

The scope of the requested relief in Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction is supported by – and taken from – Federal Rule of Civil Procedure 65(d).  Specifically, Rule 65(d)(2) provides that:

> (2) *Persons Bound*. The order binds only the following who receive actual notice of it by personal service or otherwise:
> (A) the parties;
> (B) the parties officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2).

The language submitted in Plaintiff's motion mirrors Rule 65(d)(2) and is properly limited to those people who can be enjoined under applicable law.  Accordingly, the Court has the authority to accept the language contained in Plaintiff's proposed relief as submitted.

**2.      The Benefit of Injunctive Relief Can Run to a Nonparty to the Litigation**

While the requested relief here would restrain or enjoin Defendants and others from taking certain actions against Marfork, the requested relief – by applying to corporate entities affiliated with A.T. Massey and Massey Energy – also would benefit non-parties.  There is substantial authority for the proposition that the benefit of injunctive relief can run to a nonparty

---

[8] Plaintiff will submit a proposed Preliminary Injunction Order with ordering provisions similar to those contained in its [Proposed] Order Granting Temporary Restraining Order that is attached to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.

to the litigation.  In Extendacare Health Systems, Inc. v. Gisch, the Court of Appeals of Texas recognized that nonparties can benefit from injunctive relief.  The Extendacare court stated that "[f]or nonparties to benefit from injunctive relief, the injunction should benefit the plaintiff, address past [noncompliance with the law], or address probable future noncompliance with the law." Extendacare Health Systems, Inc. v. Gisch, 1996 WL 732468, at *6 (Tex. App. Dallas 1996).

Similarly, Gregory v. Litton Systems, Inc., 472 F.2d 631, 634 (9th Cir. 1973), the Ninth Circuit Court of Appeals recognized that "in many situations . . ., injunctive relief will be necessary to give a plaintiff or a group of plaintiffs the relief to which they are entitled.  Such relief, of course, may incidentally benefit many persons not before the court."  See also Bresgal v. Brock, 843 F.2d 1163, 1170-71 (9th Cir. 1987) (recognizing "[t]here is no general requirement that an injunction affect only the parties in the suit [and] an injunction is not necessarily made overbroad by extending benefit protection to persons other than prevailing parties in the lawsuit").

Courts in surrounding jurisdictions have upheld language that expressly extends the scope to an entire class of locations or industry.  For instance, in Vacco v. Operation Rescue National, the Second Circuit Court of Appeals recognized the validity of an injunction that restrained the

> defendants, the officers, directors, agents, and representatives of defendants, and all other persons known or unknown, acting in their behalf or in concert with them, in any manner or by any means, are enjoined [from] . . .  trespassing on, [blocking or obstructing[ ] ingress into or egress from **any facility at which abortions are performed in New York City and in all locations within the Southern District of New York.**

Vacco v. Operation Rescue National, 80 F.3d 64, 67 (2d Cir. 1996).

There is no doubt, based on the prior conduct of Defendants, particularly Defendant Blevins who has trespassed more than once on Marfork's property, and those persons in active concert or participation with them (and those other persons affiliated with Climate Ground Zero and/or Mountain Justice who have trespassed before), that there is a threat of future trespasses onto mine properties affiliated with A.T. Massey and Massey Energy, including Marfork's Beetree Surface Mine property.  In light of existing precedent and the appreciable threat of future trespasses, the Court has the authority to grant injunctive relief that benefits nonparties to this litigation.

> **3.    The Court has Authority to Restrain the Defendants from Acting Outside of the Southern District of West Virginia Once Personal Jurisdiction Attaches.**

Once personal jurisdiction over the above-named Defendants has attached, the Court has authority to restrain Defendants, and their officers, agents, servants, employees, and attorneys, and those other persons who act in convert or participation with Defendants (or their officers, agents, servants, employees, and attorneys), so long as they have proper notice of the order, from acting everywhere within the Southern District of West Virginia as well as outside of the Southern District of West Virginia.  It is well-established federal common law that courts with in personam jurisdiction have the authority to enjoin acts wherever they occur.  The Supreme Court has held:

> The situs of the acts creating the nuisance, whether within or without the United States, is of no importance.  Plaintiff seeks a decree in personam to prevent them in the future.  The Court has jurisdiction (*internal citations omitted).*

*State of New Jersey v. City of New York*, 283 U.S. 473, 482, 51 S.Ct. 519, 521 (1931).

And while federal law would apply to this issue, West Virginia courts have applied the same concept:

> [a] court having jurisdiction in personam may require the defendant to do or refrain from doing, beyond its territorial

14

> jurisdiction, anything which it has power to require him to do or
> omit within the limits of its territory.

Syl. Pt. 2, *State v. Fredlock,* 52 W. Va. 232, 43 S.E. 153 (1903).[9]  There is no dispute that this Court can order Defendants to cease their trespasses and other illegal activities not only in the Southern District of West Virginia but anywhere else they may occur.

    **4.**    **The Court has Authority to Empower Law Enforcement Authorities to Take Action to Enforce Its Orders**

A number of courts in surrounding jurisdictions have approved language empowering or authorizing law enforcement authorities to act to enforce the court's order.  In McKusick v. City of Melbourne, Florida, 96 F.3d 478, 481 (11th Cir. 1996), the Eleventh Circuit Court of Appeals upheld language that "[l]aw enforcement authorities . . . are **authorized to arrest** those persons who appear to be in willful and intentional disobedience of this injunction."

In United States v. White, the District Court for the Central District of California approved similar language that empowered law enforcement officials to enforce the district court's order:

> Willful disobedience to this Preliminary Injunction or resistance to
> this Court's lawful order, rule, decree or command may subject
> any person to this Preliminary Injunction who commits such an act
> to criminal or civil prosecution for contempt of Court. . . . [T]he
> Court hereby **empowers both the Untied States Marshals and
> the San Bernardino Sheriff's Department with the authority to
> enforce this Preliminary Injunction and arrest violators for
> willful violations of this Preliminary Injunction or take other
> appropriate action in order to ensure full compliance with this
> Preliminary Injunction**.

United States v. White, 893 F. Supp. 1423, 1439 (C.D. Cal. 1995) (emphasis added). Accordingly, there is authority supporting inclusion of language that empowers law enforcement officials to take action to enforce the Court's Order.

---

[9] By way of example, the Court could enjoin a corporation from taking certain unlawful actions, and that injunction would apply just as much in another West Virginia county as it would in Raleigh County.  The same would be true if the Court restrained a husband from contact with his wife, no matter where that contact might happen to occur.

## III. CONCLUSION

Plaintiff is entitled to a temporary restraining order and subsequent preliminary injunction pending a trial on the merits of Marfork's claims. Plaintiff has suffered and in the absence of such injunctive relief will continue to suffer irreparable harm. Defendants have no recognized legal interest or cognizable legal right to enter onto (or remain on) Marfork's Beetree Surface Mine property or the mining properties of other corporate entities affiliated with A.T. Massey and Massey Energy. Defendants will not be harmed by entry of such injunctive relief because they are only being restrained or enjoined from breaking the law and tortiously interfering with Plaintiff's exclusive possession and use of real property and their respective business relationships. They are only being restrained or enjoined from tortuous and criminal conduct. Further, Defendants are without any defense to the tortious and unlawful conduct complained of here. Marfork will prevail on the merits of its claims, and the public interests weigh in favor of such injunctive relief.

Accordingly, Plaintiff respectfully requests that the Court temporarily restrain and preliminarily enjoin the above-named Defendants, and their officers, agents, servants, employees, and attorneys, and those persons who are in active concert or participation with them, who receive actual notice of the Court's Order by personal service or otherwise, from:

(a) Trespassing or otherwise congregating on any of the mining properties of the corporate entities affiliated with A.T. Massey and Massey Energy, including but not limited to Marfork's Beetree Surface Mine property in Raleigh County, West Virginia; and

(b) Interfering, obstructing, blocking, impeding or tampering with any coal operating equipment, trucks or other vehicles of any of the corporate entities affiliated with A.T. Massey and Massey Energy, including but not limited to Marfork, no matter where such equipment, trucks or other vehicle may be located.

Plaintiff further requests that the Court empower and authorize federal, state and local law enforcement authorities to enforce the Court's Order by removing any Defendants, and their officers, agents, servants, employees, and attorneys, and those persons who are in active concert or participation with them, who receive actual notice of the Temporary Restraining Order (and subsequent Preliminary Injunction Order) by personal service or otherwise, who enter or attempt to enter the mine properties of corporate entities affiliated with A.T. Massey and Massey Energy, including but not limited to Marfork' Beetree Surface Mine property in Raleigh County, West Virginia or otherwise violates the terms of any such Order and to remove any signs or other such materials from the properties posted or left by Defendants their officers, agents, servants, employees, and attorneys, and those persons who are in active concert or participation with them.

Plaintiff further requests that the Court empower and authorize the federal, state and local law enforcement authorities to enforce the Court's Order by seizing and preserving as evidence – to be made available to Plaintiff's counsel, upon reasonable request – all cameras, video cameras or recorders, audio recorders, memory cards, film, videotape, and any other recording devices and/or equipment in the possession of, on the person of, and/or in the immediate vicinity of any such trespasser.

Plaintiff further requests that the Court order that, upon a finding of contempt for a future violation of this Temporary Restraining Order (or subsequent Preliminary Injunction Order) by any of the above-named Defendants or by their officers, agents, servants, employees, or attorneys, or by those persons who are in active concert or participation with Defendants (or their officers, agents, servants, employees, or attorney), who receive actual notice of such Order by personal service or otherwise, shall be subject to a civil penalty of up to Five Thousand Dollars ($5,000) per contemner per violation of such Order, payable to Marfork, in addition to any other damages sustained by Marfork from such violation, and/or criminal contempt; and that the Court

further order that each successive violation of such Order shall subject the contemnor to a civil contempt fine double that of the previous fine, payable to Marfork, and/or criminal contempt proceedings.

**MARFORK COAL COMPANY, INC.**

**BY:    SPILMAN THOMAS & BATTLE, PLLC**

*/s/ Samuel M. Brock III*
Samuel M. Brock III (WV Bar No. 9216)
Andrew B. McCallister (WV Bar No. 10026)
300 Kanawha Boulevard, East (Zip 25301)
P.O. Box 273
Charleston, WV 25321-0273
Tel: 304.340.3800
Fax: 304.340.3801