## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **MARFORK COAL COMPANY, INC.,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:10-0069** |
| | ) | |
| **DAVID AARON SMITH, AMBER** | ) | |
| **NITCHMAN, ERIC BLEVINS,** | ) | |
| **JOSHUA FRANCISCO GRAUPERA** | ) | |
| **and ISABELLE ROZENDAAL,** | ) | |
| | ) | |
| **Defendants/Counter-Claimants.** | ) | |

### MEMORANDUM OPINION AND ORDER

The parties' Motions to Compel Discovery and Motions for Protective Orders are pending

and Responses and Replies have been filed as follows:

1. Plaintiff filed a Motion to Compel Discovery and Memorandum in Support with respect to Plaintiff's Interrogatories and Requests for Production of Documents on November 10, 2010. (Document Nos. 82 and 83.) Defendants filed a Response to Plaintiff's Motion to Compel and Memorandum in Support on November 24, 2010 (Document Nos. 99 and 100.), and Plaintiff filed a Reply on December 1, 2010 (Document No. 108.)

2. Defendants filed a Motion for Protective Order and Memorandum in Support with respect to Plaintiff's Interrogatories and Requests for Production of Documents on November 24, 2010. (Document Nos. 102 and 103.) Plaintiff filed a Response to Defendants' Motion for Protective Order on December 16, 2010. (Document No. 114.) Defendants filed a Reply on January 5, 2011. (Document No. 140.) Plaintiff filed a Motion for Leave to File a Surreply on January 6, 2011. (Document No. 144.)

3. On November 30, 2010, Defendants filed a Motion for Protective Order and Memorandum in Support with respect to Plaintiff's Request for Admissions. (Document Nos. 105 and 106.) On December 23, 2010, Plaintiff filed a Response in Opposition. (Document No. 121.)

4. Plaintiff filed a Supplemental Motion to Compel Discovery and Memorandum in Support (Document No. 120.) and a Motion for Protective

Order and Memorandum in Support (Document Nos. 122 and 123.) on December 23, 2010. On January 6, 2011, Defendants filed their Opposition to Plaintiff's Motion for a Protective Order and Memorandum in Support. (Document Nos. 141 and 142.)

Having read all of the above documents and conducted legal research in consideration of the parties' positions, the undersigned concludes that the parties' Motions to Compel and Motions for Protective Orders should be denied, no extension of time is necessary for further written discovery and depositions and the exchange of information respecting the parties' claims and defenses should be completed by January 27, 2010.

## BACKGROUND

On January 25, 2010, Plaintiff, a West Virginia corporation[1] engaged in the mining of coal at the Beetree Surface Mine in Raleigh County, West Virginia, filed a Verified Complaint, a Motion for Temporary Restraining Order and Preliminary Injunction and a Memorandum in Support. (Document Nos. 1, 4, 5 and 8 (Verification of Mr. Michael Bayes, Plaintiff's Director of Security.) By its Verified Complaint (Document No. 1.), Plaintiff alleged that Defendants, members of Climate Ground Zero, Mountain Justice and other environmental groups, unlawfully trespassed upon the Beetree Surface Mine property beginning on January 21, 2010, in protest of mountaintop mining. Plaintiff alleged that the West Virginia State Police arrested Defendants Graupera and Rozendaal and Defendants Smith, Nitchman and Blevins evaded arrest by climbing trees on the property and two of them remained on the property when Plaintiff initiated this matter. Plaintiff alleged that Defendants' actions placed them, Plaintiff's employees and contract personnel in danger and interfered with Plaintiff's business operations on the property causing Plaintiff irreparable harm and

---

[1] Plaintiff states that it is a subsidiary of A.T. Massey Coal Company Inc., and A.T. Massey Coal Company Inc., is owned by Massey Energy Company.

2

would continue to do so unless their actions were enjoined. Plaintiff claims therefore that Defendants trespassed upon its property[2], tortiously interfered with its contractual obligations and production of coal[3] and conspired to engage in the tortious actions for the purpose of interfering with Plaintiff's business operations.[4] Plaintiff requested that the District Court enjoin Defendants and their associates from "(a) Trespassing or otherwise congregating on any of the mining properties of corporate entities affiliated with A.T. Massey and Massey Energy, including but not limited to the Marfork's Beetree Surface Mine property in Raleigh County, West Virginia; and (b) Interfering, obstructing, blocking, impeding or tampering with any coal operating equipment, trucks or other vehicles of any of the corporate entities affiliated with A.T. Massey and Massey Energy, including but not limited to Marfork, no matter where such equipment, trucks or other vehicles may be located." Plaintiff also requested compensatory and punitive damages.

By its Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 4.), in addition to requesting that the District Court enjoin Defendants and their associates as stated

---

[2] To prove that Defendants trespassed upon its property, Plaintiff must establish that they went on Plaintiff's property without invitation for their own purpose and not in the performance of any duty to Plaintiff. *Huffman v. Appalachian Power Company*, 187 W.Va. 1, 4, 415 S.E.2d 145, 148, (1991).

[3] To prove that Defendants tortiously interfered with its contractual obligations, Plaintiff must establish (1) the existence of a contractual or business relationship or expectancy, (2) an intentional act of interference of Defendants as persons outside the relationship or expectancy, (3) the interference caused harm and (4) damages. *Hatfield v. Health Management Associates of West Virginia*, 223 W.Va. 259, 267, 672 S.E.2d 395 403 (2008).

[4] To prove that Defendant conspired to engage in a tortious action for the purpose of interfering with Plaintiff's business operations, Plaintiff must establish that two or more of the Defendants in combination committed a wrongful act or a lawful act in an unlawful manner causing Plaintiff harm. *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255, 268 - 269 (2009). The elements of a civil conspiracy claim are met therefore when it is proven that (1) two or more people who are named as defendants (2) agreed to commit overt tortious act(s) for a common purpose (3) committed the overt tortious act(s) (4) proximately causing Plaintiff harm.

in its Complaint, Plaintiff requested that the District Court (1) authorize law enforcement agencies to enforce the Court's restraining order and injunction by removing Defendants and their associates and their signs and materials from the property and (2) provide that anyone found in contempt of the District Court's Order would be subject to a $5,000 civil penalty.

The District Court held an evidentiary hearing upon Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction on January 26, 2010 (Document No. 11.), and filed a Memorandum Opinion and Order and an Order Granting in part Plaintiff's Motion for Temporary Restraining Order on January 27, 2010 (Document Nos. 12 and 13.).[5] Applying the standard which the United States Supreme Court announced in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249(2008)("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.") and the Fourth Circuit Court of Appeals has recently adopted in The Real Truth About Obama v. Federal Election Commission, 575 F.3d 342, 346 - 347 (4th Cir. 2009), judgment vacated, 130 S.Ct. 2371, 176 L.Ed..2d 764 (April 26, 2010), the District Court determined that Plaintiff met each of the components of the standard and ordered as follows (Document No. 13.):

> Defendants and their officers, agents, servants, employees, and attorneys, and those other persons who are in active concert or participation with Defendants (or their officers, agents, servants, employees or attorneys), who receive actual notice of this Temporary Restraining Order by personal service or otherwise are hereby restrained

---

[5] The District Court stated that it would "not fashion an order that is broader than that which is required" and found Plaintiff's request that the Court authorize law enforcement to enforce the Court's Order "not warranted at this time."

4

and enjoined until **February 10, 2010, at 3:00 p.m.** from doing or causing to be done, the following:

(a) Trespassing or otherwise congregating on any mine properties in the Southern District of West Virginia, including but not limited to Marfork's Beetree Surface Mine property in Raleigh County, West Virginia; and

(b) Interfering, obstructing, blocking, impeding or tampering with any coal operating equipment, trucks or other vehicles of any mining properties, including but not limited to Marfork, no matter where such equipment, trucks or other vehicles may be located in the Southern District of West Virginia.

The District Court further ordered that its Order be served upon Defendants, the Court would hold a hearing upon Plaintiff's Motion for Preliminary hearing on February 4, 2010, and its Order would become effective when Marfork posted a $100,000 bond.

By Order filed on February 4, 2010, the District Court extended its Temporary Restraining Order until February 24 and scheduled the hearing upon Plaintiff's Motion for Preliminary Injunction on February 23, 2010. (Document No. 29.) On February 23, 2010, the District Court held a hearing upon Plaintiff's Motion for Preliminary Injunction (Document No. 38.) and extended the Temporary Restraining Order until February 26, 2010. (Document No. 39.) On February 26, 2010, the District Court filed a Memorandum Opinion and Order and an Order Granting Preliminary Injunction. (Document Nos. 43 and 44.)

On March 2, 2010, Defendants filed their Answer and Affirmative Defense. (Document No. 47.) Defendants admitted the allegations in Plaintiff's Verified Complaint pertaining to their residency and therefore diversity of citizenship, venue and the location of the Beetree Surface Mine. Defendants, however, denied allegations pertaining to the required amount necessary for diversity jurisdiction. Defendants refused to answer most of Plaintiff's allegations pertaining to their conduct on January 21, 2010, asserting their privilege under the Fifth Amendment of the United States Constitution. (Id., ¶¶ 19 - 23, 40 - 42.) Defendants assert as their first affirmative defense "the moral

5

imperative . . . to protect the environment for future generations which governs any and all actions which they have taken." Defendants further assert in defense the pollution, destruction of future resources and local and regional heritage, threat to health, morals, safety, comfort, convenience and welfare and nuisance caused by Plaintiff's illegal mining operations. On June 17, 2010, Defendants filed their Amended Answer and Affirmative Defense which included a Counterclaim. (Document No. 57.) Defendants' amended answers to the allegations contained in Plaintiff's Complaint are basically the same as those which Defendants stated initially. By their Counterclaim, Defendants charge that Plaintiff engaged in outrageous conduct, intentional and/or negligent infliction of emotional distress and harassment by "using loud noise and bright lights to deprive them of needed sleep, and to harass them" causing "both physical discomfort and mental distress as was planned by plaintiff. Said behavior constitutes the tort of outrage."[6] On July 1, 2010, Plaintiff filed a Motion to Dismiss Defendants' Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Memorandum in Support. (Document Nos. 58 and 59.)[7]

The District Court filed an Order and Notice on March 3, 2010, requiring, among other things that the parties conduct a discovery plan conference pursuant to Federal Rule of Civil

---

[6] To prove intentional infliction of emotional distress, Defendants must establish that (1) Plaintiff's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) Plaintiff acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) Plaintiff's actions caused Defendants to suffer emotional distress; and (4) Defendants' emotional distress was so severe that no reasonable person could be expected to endure it. *Bine v. Owens*, 208 W.Va. 679, 684, 542 S.E.2d 842, 847 (2001).

[7] Plaintiff states in its Motion to Dismiss (Document No. 58.) that Defendants Smith, Graupera and Rozendaal were arrested and charged with trespass in January, 2010, and have pled guilty to the charge. Plaintiff reports that Defendants Nitchman and Blevins were also arrested in January, 2010, and charged with trespass and the criminal cases against them remained pending at the time Plaintiff filed its Motion.

Procedure 26(f). (Document No. 48.) The parties did so and filed their Report on April 28, 2010, proposing a discovery plan and adopting the discovery limits set forth in the Federal Rules of Civil Procedure. (Document No. 49.) The District Court filed its Scheduling Order on May 4, 2010. (Document No. 51.) The District Court's Scheduling Order required that the parties complete written discovery by November 27, 2010, and all depositions by January 27, 2010, and provided that the party having the burden of proof on an issue was required to disclosure the identity and written report of the party's expert witnesses pursuant to Rule 26(a)(2)(A) and (B) by November 8, 2010.

On December 3, 2010, the undersigned held a telephonic hearing to consider modifications to the Court's Scheduling Order and filed an Order on December 10, 2010, extending the time for completion of written discovery to January 7 and the time by which depositions should be completed to January 27, the date by which dispositive motions were required to be filed and requiring that dispositive motions challenging the District Court's jurisdiction be filed by January 7, 2011. (Document No. 111.)

On January 6, 2011, the parties called worrying that the time is passing while the undersigned considers the pending discovery motions and wishing to discuss modification of the District Court's Scheduling Order to allow more time for discovery and establish new dates for the remaining stages of this litigation including trial. On January 7, 2011, the undersigned held a hearing in Charleston, West Virginia, respecting the parties' claims and defenses, the course written discovery has taken, the pending discovery motions and the District Court's schedule. During the hearing the Defendants' requested additional time for filing a motion challenging the District Court's jurisdiction, and it was determined that it should be extended from January 7 to January 27, 2011.

7

## THE DISCOVERY MOTIONS

**A.     Plaintiff's Motion to Compel Discovery (Document No. 82.).**

On April 29, 2010, Plaintiff served its First Set of Interrogatories and Requests for Production of Documents containing 26 numbered Interrogatories and 21 Requests for Production of Documents upon Defendants. (Document No. 82, Exhibit A.) By letter dated May 7, 2010, Defendants' counsel  complained to Plaintiff's counsel that "the number of discovery requests, including subparts, exceeds the amount allowed under the Rules." (<u>Id.</u>, Exhibit C.) By letter dated May 14, 2010, Plaintiff's counsel responded that "[w]e are reviewing the Interrogatories and will respond in the coming days. However, as there is no limit on the number of Requests for Production of Documents – and since you have not raised any issue with the Requests for Production – I am hereby informing you that I will not be reserving those Requests for Production. Accordingly, your deadline for responding to those Requests has not changed. Please respond as specified by the Federal Rules of Civil Procedure within the time allowed." (<u>Id.</u>, Exhibit D.) On May 21, 2010, Plaintiff served its Revised First Set of Interrogatories containing 22 numbered Interrogatories upon Defendants. (<u>Id.</u>, Exhibits B and E.) Plaintiff inquired respecting, among other things, persons with whom Defendants resided since January 1, 2008, Defendants' membership in or affiliation with organizations advocating against mountaintop removal mining and participation in other protests, communications between Defendants and others advocating against mountaintop removal mining since January 1, 2009, and Defendants' recruitment and training. By letter to Plaintiff's counsel dated June 23, 2010, Defendants' counsel requested until July 23 to provide answers to Plaintiff's written discovery (<u>Id.</u>, Exhibit F.), and Plaintiff's counsel authorized the extension stating that "I hope that I receive substantive responses and documents this time. If you are going to be objecting

8

in the manner done in the Boone County case, I would ask that you go ahead and do that as soon as you can so that we can move forward with dealing with those objections."[8] (Id., Exhibit G.) On July 23, 2010, Defendants served their Combined Answers to Plaintiff's Revised First Set of Interrogatories. (Id., Exhibit H.)[9] By letter to Defendants' counsel dated August 11, 2010, Plaintiff's counsel stated that Defendants' Answers were inadequate and deficient because they contained objections which were "purely boilerplate and not specific to any of the interrogatories", were

---

[8] The record contains no indication that counsel for the parties entered stipulations indicating their agreement respecting extensions of time by which Defendants would answer Plaintiffs discovery requests. Rule of Civil Procedure 29 requires that parties agreeing to extensions of time and other changes in discovery procedure commit their agreements to writing by entering stipulations. Rule 29 provides as follows respecting stipulations about discovery procedures:

> Unless the court orders otherwise, the parties may stipulate that:
> * * *
> (b) other procedures governing or limiting discovery be modified – but a stipulation extending the time for any form of discovery must have court approval if it would interfere with the time set for completing discovery, for hearing a motion, or for trial.

A letter from one attorney to another conceding to a request for an extension of time in the interest of getting better answers to written discovery requests does not constitute a stipulation. A stipulation in this context is a separate written document signed by the attorneys for the parties setting forth specifically their agreement respecting changes in discovery procedure. Absent a stipulation or stipulations when counsel have agreed to more than one extension of time and/or change in discovery procedure, the parties run the risk that the Court may regard their motions to compel or other motions in aid of discovery as filed more than thirty days after discovery requests were due and therefore untimely under Local Rule of Civil Procedure 37.1(c) quoted *infra*.

[9] In their Combined Answers (Exhibit H.), Defendants initially answered Interrogatories 5, 8, 9, 11, 12 and 14 stating "Objection. Not calculated to lead to relevant evidence." Defendants answered Interrogatory No. 10 stating "Objection. Not calculated to lead to relevant evidence. Additionally, this interrogatory is obtrusive and burdensome." Defendants answered Interrogatory 15 stating no objection, and each of the Defendants then provide a statement indicating whether or not they had written or published anything, and referring to a photograph one of them took which was published, letters and updates which they had written and interviews which one of them had which resulted in articles. They include this same statement in their Amended Combined Answers. Defendants answered Interrogatories 16 through 22 stating "Objections. Asks for information which could tend to incriminate defendants. This is not calculated to lead to relevant evidence."

combined when "[t]he discovery requests called for each defendant to answer the discovery separately", and included unfounded and unsupported objections on grounds of relevancy and burdensomeness. Plaintiff's counsel stated further that "I strongly suspect that I will be forced to file a Motion to Compel. I would, however, like to avoid the necessity of filing a Motion to Compel, so I would ask that you withdraw all of the objections and provide complete answers to interrogatories and all responsive documents by August 19, 2010. Please do not provide me with more or additional objections. The time for that has long past, particularly with respect to the document requests." (Id., Exhibit I.) On August 16, 2010, Plaintiff's counsel agreed to a two-week extension of time for Defendants' counsel "to review the discovery issues and advise as to when supplemental responses could be provided." (Id. at p.3, ¶ 9 and Exhibit J.)[10] Plaintiff's counsel wrote Defendants' counsel on October 8, 2010, stating that I know that we have talked a few times since [the middle of August] and you have needed more time to supplement the responses, but I am running out of time. We have a scheduling order and deadlines in this case, and I cannot afford to wait any longer. Please let me know if you have those responses ready, even if you only have some of them or please let me know when you think you will have them. If I cannot get complete responses in the next week or so, I will need to move to compel them." (Id., Exhibit K.) Defendants' counsel responded by e-mail on October 21, 2010, that "[w]e have been working on these responses and have a few loose ends to tie up. We will be able to send you the completed responses by October 21." (Id., Exhibit L.) On October 22, 2010, Defendants served their Amended Combined Answers to Plaintiff's First Set of

---

[10] The undersigned notes that on August 16 and September 10, 2010, the parties filed a Stipulation pursuant to Federal Rule of Civil Procedure 29 allowing for extensions of time by which Plaintiff would serve responses to Defendants' First Set of Interrogatories and Request for Production of Documents. (Document Nos. 67 and 69.)

Interrogatories.[11] (Id., Exhibit M.) By Plaintiff's counsel's letter to Defendants' counsel dated November 2, 2010, Plaintiff's counsel complained that Defendants did not respond to the Requests for Production of Documents at all, continued to make "general, purely boiler plate, objections to virtually every interrogatory", and improperly objected that Plaintiff continued to submit more interrogatories than Rule 33(a)(1) allows, 25 interrogatories including discrete subparts. Plaintiff's counsel stated that "I have given your clients ample time and leniency in providing me with responses. Yet, they don't respond (at all, to the document requests) and you continue to rely on improper objections. I must now file a Motion to Compel and I will do so by the end of the week." (Id., Exhibit N.) Defendants' counsel responded by letter dated November 8, 2010, explaining Defendants' positions with respect to their responses to Plaintiff's Interrogatories. (Id., Exhibit O.). In addition to discussing their objections to the Interrogatories in issue as set forth in their Amended Combined Answers, Defendants raised the Noerr-Pennington doctrine deriving from the United States Supreme Court's decisions in Eastern Railroad President's Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), as a further

---

[11]  In their Amended Combined Answers (Exhibit M.), Defendants objected to the interrogatories in issue claiming that they sought information which is irrelevant to these proceedings and not calculated to lead to the discovery of relevant information, were overbroad and burdensome, infringed upon their First and Fourteenth Amendment right to anonymous association to the extent that the interrogatories inquired about their participation in and affiliation with groups advocating against mountaintop removal mining procedures and exceeded the number of interrogatories allowed under Rule of Civil Procedure 33(a)(1). Defendants did not object on grounds that providing the requested information would tend to incriminate them as they did in their initial Combined Answers.

constitutional basis for not providing the requested information.[12]

Plaintiff filed its Motion to Compel Discovery and Memorandum in Support on November 10, 2010. (Document Nos. 82 and 83.) Plaintiff asserts that because Defendants did not respond at all to its April 29, 2010, Requests for Production of Documents, they must be compelled to respond fully to its Requests for Production of Documents without objection. Plaintiff further asserts that Defendants must be compelled to respond to its Interrogatories 5, 8 -12 and 14 - 22 because they are relevant to its claims and do not violate Plaintiff's right of association and Defendants have waived any objection to the number of interrogatories by selectively answering some of them and in any event they are in conformity with the limit set forth in Federal Rule of Civil Procedure 33(a)(1).[13]

On November 24, 2010, Defendants filed their Response to Plaintiff's Motion to Compel and a Memorandum in Support. (Document Nos. 99 and 100.) Defendants state that they "have made a good faith attempt to provide complete answers to the discovery that is at issue." Respecting their answers to Plaintiff's Interrogatories, they contend that (1) they did not waive the right to object to them; (2) tallying up interrogatories and their subparts, Plaintiff submitted more than 25 interrogatories; and (3) their objections to Interrogatories 5, 8 - 12 and 14 - 22 were "not 'boilerplate.' They are tailored objections which summarize large areas of constitutional law.

---

[12] The undersigned notes that Defendants did not actually cite the *Noerr-Pennington* doctrine in responding to Plaintiff's Revised First Set of Interrogatories or Request for Production of Documents (Document No. 108, Exhibit A.) Defendants only began referring to the doctrine as they were fielding Plaintiff's complaints that their responses were inadequate. Defendant then actually cited the doctrine in responding to Plaintiff's Second Set of Requests or Production of Documents in December, 2010. (Document No. 120, Exhibit D.)

[13] Local Rule of Civil Procedure 37.1(c) provides that "Motions to compel or other motions in aid of discovery not filed within thirty days after the discovery response or disclosure requirement was due are waived, and in no event provide an excuse, good cause or reason to delay trial or modify the scheduling order."

Despite objections to some of the disputed interrogatories, Defendants have partially answered them, providing, or committing to provide, substantive information." Respecting Plaintiff's Request for Production of Documents, Defendants state that they have responded, and Plaintiff's Motion to Compel is therefore moot.[14] They further state that they do not have many documents relating to the circumstances which are the basis of this action. They state that "[t]he activities that are the subject of this litigation are not paper-intense endeavors that result in banker's boxes full of documents."

Plaintiff filed a Reply on December 1, 2010. (Document No. 108.) Plaintiff asserts that, contrary to Defendants' claim that they have attempted in good faith to provide complete answers to Plaintiff's Interrogatories and Requests for Production of Documents, they have engaged in stonewalling to avoid and delay responding to Plaintiff's written discovery requests. Plaintiff argues that Defendants waived their right to object to the number of Interrogatories by selectively answering the first 17 of them –  albeit with generic, non-specific objections on the basis of relevancy and the First Amendment privilege of association – rather than objecting to the Interrogatories altogether as exceeding the number authorized under Rule 33(a). (Id., pp. 2 - 4.) Plaintiff further contends that the list of organizations opposed to mountain top removal in Interrogatory No. 14 and the list of protests at mine sites in Raleigh and Boone Counties contained in Interrogatory 22 were not intended as subparts but were intended to assist Defendants in providing complete answers. Plaintiff therefore asserts that its Revised First Set of Interrogatories contained 22 interrogatories including subparts and therefore was in compliance with Rule 33(a). (Id., pp. 4 - 6.) Plaintiff also contends that Defendants must be compelled to respond to

---

[14] Defendants filed a Certificate of Service indicating that they served their Responses to Plaintiff's Requests for Production of Documents upon Plaintiff by hand delivery on November 17, 2010, seven days after Plaintiff filed its Motion to Compel. (Document No. 90.)

Interrogatories 5, 8 - 12 and 14 - 22 because their responses do not comply with the Federal Rules of Civil Procedure and this Court's requirements as set forth in <u>Mills v. East Gulf Coal Preparation, LLC</u>, 259 F.R.D. 118, 132 (S.D.W.Va. 2009). (<u>Id.</u>, pp. 6 - 10.)[15] Respecting Plaintiff's Requests for Production of Documents, Plaintiff states that though Defendants claim to have responded to them in good faith, they actually did not do so until seven days after Plaintiff filed its Motion to Compel and then provided insufficient responses. (<u>Id.</u>, pp. 10 - 16.)

### B.     Defendants' Motion for Protective Order (Document No. 102).

Defendants also filed a Motion for Protective Order and Memorandum in Support on November 24, 2010. (Document Nos. 102 and 103.) By their Motion, Defendants request that the Court limit Plaintiff's interrogatories to 25 and order that they are not required to provide responses to requests for information which implicate their First Amendment right of freedom of association or pertain to Plaintiff's allegations of conspiracy. Defendants urge that Plaintiff and other Massey subsidiaries have initiated this action and three others in West Virginia State Courts as SLAPPs, Strategic Lawsuits Against Public Participation, "using tactics of 'deluge discovery' to overwhelm

---

[15] The undersigned stated as follows in *Mills*, 259 F.R.D. at 132:

> The Rules anticipate that each objection to a discovery request will state precisely why the request is objectionable in view of the claims and defenses presented in the litigation. In most if not all cases, an objection to a discovery request in conformity with the Rules will contain (1) a recital of the parties' claims and defenses, (2) a summary of the applicable statutory and/ or case law upon which the parties' claims and defenses are predicated including the elements of each claim or defense, (3) a discussion of Court decisions considering the breadth or scope of discovery and any limitations upon discovery in the same or a similar type of case and (4) a statement respecting how and/or why the request seeks information which is irrelevant or will not likely lead to the discovery of relevant information or is vague, overly broad, burdensome or interposed for an improper purpose. Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections. *Sabol v. Brooks*, 469 F.Supp.2d 324, 328 (D.Md. 2006).

opponents, propounding hundreds of interrogatories, requests for production and requests for admissions, along with incessant letter demands over the responses." (Document No. 103, p. 2.) Defendants assert, as they did in their Response to Plaintiff's Motion to Compel, that their objections to Plaintiff's Interrogatories are not boilerplate as Plaintiff claims but are proper and legitimate objections based upon their constitutional rights. (Id., pp. 2 - 3.) Defendants further contend that what Plaintiff is calling a conspiracy is actually "the entire anti-[mountain top removal] movement, which includes hundreds of people from many states . . .." Defendants contend that Plaintiff is seeking information about the communications, activities and relationships of the people involved in the movement when "[m]ost of the acts and associations targeted by the interrogatories are constitutionally protected." (Id., pp. 3 - 5.) Defendants discuss the scope of the First Amendment protection against discovery of information pertaining to their associational relationships acknowledging that they must demonstrate in the first place that disclosure of the requested information would have a "chilling effect" upon them. (Id., pp. 5 - 11.) To demonstrate that the requirement that they respond to Plaintiff's discovery will have a "chilling effect" upon their associational relationships, Defendants submitted the Affidavit of Laura Antrim Caskey, a photojournalist who is charged with trespass by a Massey subsidiary in another civil action and received "nearly identical discovery questions." (Document No. 102 - 2, ¶ 11.) Ms. Caskey wrote that "[r]evelation of my private thoughts and communications . . . will influence my willingness to cover stories, write and speak publicly and even communicate further with . . . Defendants and their fellow activists." (Id.) Ms. Caskey stated that "[i]f the personal, non-public communications I have had regarding [mountain top removal], communications which contained and expressed my personal political and moral views, are ordered to be disclosed through discovery in this lawsuit, it will

drastically change how I communicate in the future. I will be less willing to engage in news coverage of Climate Ground Zero events and to initiate communications about [mountain top removal], knowing that my private thoughts and acts to inform the public and prompt people to petition the government may be tracked and revealed. I have already altered my journalistic practice as to the ways that I cover Climate Ground Zero demonstrations and actions, so as to not experience further arrest or further contempt charges for allegedly trespassing on mine properties despite doing so as a *bona fide* photojournalist." (Id., ¶ 12.) Defendants further cite the Noerr-Pennington doctrine as a basis for prohibiting Plaintiff's inquiries. Defendants claim that under the Noerr-Pennington doctrine "[p]eaceful advocacy of civil disobedience to influence change in governmental policy is First Amendment protected. The First Amendment right to petition the government for redress of grievances protects from subsequent legal action any communications intended to influence government action." (Document No. 103, p. 12.)  Thus, "[e]ven if under other circumstances an actionable conspiracy might exist, liability cannot extend beyond those who actually committed the civil disobedience. While seeking deterrence is not per se unlawful, pursuing civil sanctions against those whose only act was to advocate non-imminent civil disobedience is not permissible." (Id., p. 14.) Citing City of Columbia v. Omni Outdoor Advertising Inc., 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), which expanded the Noerr-Pennington doctrine, Defendants state that "[p]etitioning the government for redress of grievances is not, and cannot be, a conspiratorial, anti-competitive business practice. So both the civil conspiracy and tortious interference claims of Marfork are likely not valid grounds for relief. The Defendants, through symbolic acts of civil disobedience, were petitioning government for redress against what they believed to be environmental destruction and lawbreaking by destroying mountains for coal. Even if their intent

included harm to Marfork's coal business, Defendants' overriding goal of changing governmental regulation of [mountain top removal] renders them immune from a lawsuit seeking conspiracy or tortious interference related damages." (Id.) Defendants then discuss how their First Amendment rights apply to render information which Plaintiff seeks by its Interrogatories irrelevant and otherwise not a proper subject of discovery.

Plaintiff filed a Response to Defendants' Motion for Protective Order on December 16, 2010. (Document No. 114.) Plaintiff asserts that Defendants' Motion for Protective Order, filed months after their responses to Plaintiff's written discovery were due and they actually provided their responses to Plaintiff's Interrogatories, is untimely and procedurally improper. (Id., pp. 7 - 8.) Plaintiff further asserts that its discovery requests do not exceed 25 as required by Rule 33(a)(1) (Id., pp. 9 - 11.), do not violate or infringe upon Defendants' First Amendment rights (Id., pp. 11 - 14.), and the Noerr-Pennington doctrine is inapplicable and cannot be applied to foreclose discovery in this case because by trespassing on its property and interfering with its mining operations, Defendants were not petitioning the government. (Id., pp. 14 - 18.)

Defendants filed a Reply on January 5, 2011. (Document No. 140.) Defendants assert that they responded or objected to Plaintiff's Interrogatories on July 23 and October 22, 2010, within agreed upon time frames, and therefore their responses were timely and they did not waive their right to object. Defendants further indicate that they were involved in discussions to work out the discovery issues until about November 8, 2010, as is evident from their letter of that date mentioned above and therefore they "had no opportunity to move for a protective order before Plaintiff's November 10 filing of the Motion to Compel." (Id., p. 6.) They therefore contend that their Motion for Protective Order was timely. Defendants then indicate that Plaintiff's inquiries into their

affiliations with other groups and persons advocating against mountaintop removal mining procedures are expansive and suggest that Plaintiff intends to "implead additional Defendants who committed no trespass against [Plaintiff] for the purpose of sheer retribution." (Id., p. 7.) Respecting their assertion of the <u>Noerr-Pennington</u> doctrine as a basis for objecting to Plaintiff's discovery, Defendant's contend that Plaintiff indicated in its Verified Complaint that their activities along with others protesting mountaintop removal mining constituted civil disobedience intended to cause the government to prohibit those practices and by doing so, Plaintiff "made a binding judicial admission of fact which provides Defendants with an absolute, complete <u>Noerr-Pennington</u> defense to the conspiracy and tortious interference claims of the Verified Complaint. The judicial admission precludes discovery by dispensing with the need for it." (Id., p. 10.)

Plaintiff filed a Motion for Leave to File a Surreply on January 6, 2011. (Document No. 144.) Plaintiff takes issue with Defendants' argument that it made a judicial admission in its Verified Complaint which gave Defendants an absolute and complete defense under the <u>Noerr-Pennington</u> doctrine and quotes the Fourth Circuit's decision in <u>North Carolina Electric Membership Corp. v. Carolina Power & Light Co.</u>, 666 F.2d 50 (4th Cir. 1981), "Noerr-Pennington does not apply to discovery."

## C.    Defendants' Motion for Protective Order with Respect to Plaintiff's Request for Admissions (Document No. 105.).

On November 12, 2010, Plaintiff served a First Set of Requests for Admissions upon each Defendant containing over 100 Requests. The Requests for Admissions total 546.[16] On November 30, 2010, Defendants filed their Motion for Protective Order and Memorandum in Support with

---

[16] A copy of Plaintiff's Requests for Admissions to each of the Defendants is in the record at Document No. 107.

respect to Plaintiff's Requests for Admissions. (Document Nos. 105 and 106.) Defendants assert that

the Requests for Admissions are "burdensome, irrelevant, argumentative and unreasoned"

(Document No. 105.) and "call for legal conclusions or admission of central facts which are in

dispute" (Document No. 106, p.3.). They further contend that the Requests for Admissions inquire

respecting "information protected by the Constitutional right of freedom of association" and "[t]he

Noerr-Pennington doctrine protects peaceful advocacy of civil disobedience and bars pursuit of

discovery into conspiracy allegations." (Document No. 105.) Defendants request that the Court limit

the number of Requests for Admissions which Plaintiff can submit as it did in <u>Felman Production,</u>

<u>Inc., v. Industrial Risk Insurers</u>, 2009 WL 3668038 (S.D.W.Va.)(District Judge

Chambers)(Defendants filed a Motion for Reconsideration of the Court's Amendment of its

Scheduling Order providing that "[e]ach side may conduct or submit 15 depositions of fact

witnesses; 20 interrogatories; and 20 requests for admissions. Parties may exceed these limits only

by agreement or with leave of the Court." Judge Chambers found that the three defendants shared

a corporate relationship and counsel and therefore were required to adhere to the Court's per-side

limits upon discovery.).[17]

Plaintiff filed a Response in Opposition to Defendants' Motion for Protective Order on

December 23, 2010. (Document No. 121.) Noting that many of the Requests for Admissions served

upon the Defendants are "similar, if not the same" and observing that Federal Rule of Civil

Procedure 36 contains no limit upon the number of Requests for Admissions which may be

---

[17] Defendants also cite the decision of a United States Magistrate Judge in the Eastern
District of Michigan finding that the 297 Requests for Admissions which defendants served upon
plaintiff were oppressive, unduly burdensome and improper because they called for conclusions of
law or admissions of central facts in dispute and limiting the number of requests for admissions
which may be submitted to 25 per party.

submitted, Plaintiff states that the number of Requests served upon Defendants is reasonable in view of the parties' claims and defenses and for a proper purpose, "to save time and expense at trial". Plaintiff further contends that Defendants have not shown that the Requests for Admissions are burdensome and the authority on which they rely, <u>Felman Production, Inc.</u>, is inapposite because the Scheduling Order in this case does not limit the number of Requests for Admissions which each side may submit. Plaintiff argues that (1) Defendants have taken a "shotgun" approach in seeking a protective order stating several grounds but not identifying specifically the Requests for Admissions to which they apply and in any event (2) Plaintiff has not requested that Defendants admit to conclusions of law, (3) it is proper to seek admission of central facts in this jurisdiction, (4) it is improper to object to requests for Admissions based upon relevancy as "requests for admissions are not a true discovery device", and (5) the First Amendment right of association and the <u>Noerr-Pennington</u> doctrine provide no basis for Defendants' request for a protective order.

**D.    Plaintiff's Supplemental Motion to Compel Discovery filed on December 23, 2010 (Document No. 120.).**

Plaintiff moves to compel Defendants to respond to Interrogatory No. 3 of its Revised First Set of Interrogatories to Each Defendant, Request No. 2 of its First Set of Interrogatories and Request for Production of Documents to Each Defendant, its Second Set of Interrogatories to Each Defendant and Second Request for Production of Documents to Each Defendant. By Interrogatory No. 3 of its Revised First Set of Interrogatories, Plaintiff requested and Defendants answered as follows:

> Please identify each and every person whom you expect to call as an expert witness in this case, describe the subject matter on which the expert is expected to testify, the substance of the expert's testimony, the opinions to be rendered by the expert and all facts relied on by the expert in formulating and rendering those opinions.

>Answer: Objection. Defendants will comply with the Court's Scheduling Order and
>have not yet determined the experts they may call.

By Request No. 2 of Plaintiff's First Request for Production of Documents, Plaintiff requested and

Defendants responded as follows:

>Please Produce all documents which were provided to, utilized by, created by, and/or
>reviewed by any expert witness expected to testify or who may testify at the trial of
>this case. The requested documents will be produced with the expert disclosure.

>Response: Any responsive documents will be sent to Plaintiff's counsel at the time
>the expert disclosures are filed. Many of these documents are in the possession of the
>Plaintiff including but not limited to specifications of the air horns.

The District Court's Scheduling Order provided that the party having the burden of proof on an issue

was required to disclosure the identity and written report of the party's expert witnesses pursuant

to Rule 26(a)(2)(A) and (B) by November 8, 2010. (Document No. 51.) Plaintiff states that

Defendants made no disclosure as the Court's Scheduling Order required but identified Jennifer

Osha Buysse, a doctoral candidate in the Department of Geology and Geography at West Virginia

University focusing upon the impacts of mountain top removal on land use and change in the Coal

River Valley, West Virginia, as an expert witness and provided her written report on that topic on

December 8, 2010. Plaintiff states that though Defendants have identified Ms. Buysse as an expert

witness and provided her report, they have not provided supplemental responses to Interrogatory No.

3 and Request No. 2. Respecting its Second Set of Interrogatories and Request for Production of

Documents, on November 2, 2010, Plaintiff served one additional Interrogatory (Interrogatory No.

23.) requesting information about Defendants' injuries and damages claimed in their Counterclaim

and four additional Requests for Production of Documents upon Defendants requesting information

respecting the same thing, Defendants' expert witnesses, and their planning, recruitment, training

and education respecting their trespass upon Plaintiff's property beginning on January 21, 2010, and

21

protest against mountain top removal. Defendants objected to the Interrogatory claiming that it was the 44th Interrogatory, well beyond the number allowed under Rule 33(a), and objected to the Requests for Production of Documents claiming that they needed information from Plaintiff respecting the light and horn devices which Plaintiff used before they could provide information respecting their injuries and expert witnesses and asserting irrelevancy, the First Amendment right of association and the <u>Noerr-Pennington</u> doctrine as grounds for refusing to provide information about their involvement in the January 21, 2010, trespass and protest and their protest of mountaintop removal.

   E. **Plaintiff's Motion for Protective Order with respect to Defendants' individual <u>Second Sets of Interrogatories (Document No. 122.).</u>**

  Plaintiff states that on November 23, 2010, Defendants Smith, Nitchman, Blevins and Graupera individually served Second Sets of Interrogatories upon Plaintiff each containing seven Interrogatories or less. (Document No. 122, Exhibits A through D.) Plaintiff asserts that because Defendants are charged with acting together in trespassing upon Plaintiff's property in protest of mountain top removal, are jointly represented by the same attorneys and have entered combined responses in this matter, they must be regarded as one party. Thus, Plaintiff complains that, adding up the 18 Interrogatories contained in Defendants' First Set of Interrogatories (<u>Id.</u>, Exhibit E.) and the seven or less Interrogatories contained in each of the four Defendants' individual Second Sets of Interrogatories, Defendants have served a total of forty Interrogatories upon Plaintiff and have therefore exceeded the maximum of 25 authorized under Rule 33(a).

  On January 6, 2011, Defendants filed their Opposition to Plaintiff's Motion for a Protective Order and Memorandum in Support. (Document Nos. 141 and 142.) Defendants contend that each of them are entitled to serve up to 25 interrogatories each under Rule of Civil Procedure 33(a)(1)

and the five of them have served a total of 40 interrogatories upon Plaintiff.

## **DISCUSSION**

Defendants, who along with many others strongly and actively disapprove of mountaintop removal mining, demonstrated their disapproval by occupying Plaintiff's property and allegedly interfering with its business activities there beginning on January 21, 2010, and this case emanated quite naturally from those circumstances with the parties continuing to maintaining a level of indignation as injunction proceedings were concluded and the focus shifted to the parties' claims and defenses. Thus, in written discovery Plaintiff has taken a broad and potentially expansive approach inquiring into matters which are beyond the scope of its claims when a limited and narrow approach would have sufficed. Plaintiff is claiming trespass, intentional interference with its contractual relationships and civil conspiracy in view of Defendants' protest of Plaintiff's mountaintop removal mining practices upon Plaintiff's property. Defendants were arrested and charged with trespass, and three of them have pled guilty. Little, if any, discovery is necessary therefore upon Plaintiff's claim of trespass as it is established that Defendants went on and occupied Plaintiff's property without any invitation. These circumstances also support Plaintiff's interference claim as Defendants' trespass likely disrupted Plaintiff's business operations. Otherwise, information to prove the existence of contractual relationships with which Defendants allegedly interfered and the harm and damages which Plaintiff suffered is in Plaintiff's possession. Limited discovery is necessary respecting Plaintiff's civil conspiracy claim as Plaintiff must establish that Defendants entered an agreement to trespass upon Plaintiff's property to protest its mountaintop removal mining practices. Otherwise, Defendants' trespass is established and evidence of the harm which Plaintiff sustained as a consequence of Defendants' alleged concerted activity is in Plaintiff's

23

possession. Nevertheless, many of Plaintiff's discovery requests inquire into matters which are of little, if any, relevance to the claims and defenses of the parties and would yield little, if any, information important to resolution of any issues in this case. For example, Plaintiff inquired in its Interrogatories respecting persons with whom Defendants resided since January 1, 2008, Defendants' membership in or affiliation with organizations advocating against mountaintop removal mining and participation in other protests, communications between Defendants and others advocating against mountaintop removal mining since January 1, 2009, and Defendants' recruitment and training. Beyond relevance and weighing the little value this information has in this action against Defendants' asserted constitutional interest, the undersigned finds that Defendants' constitutional interest prevails.

Defendants, on the other hand, assert in defense "the moral imperative . . . to protect the environment for future generations which governs any and all actions which they have taken." Defendants further assert in defense the pollution, destruction of future resources and local and regional heritage, threat to health, morals, safety, comfort, convenience and welfare and nuisance caused by Plaintiff's illegal mining operations. Defendants charge in their Counterclaim that Plaintiff engaged in outrageous conduct, intentional and/or negligent infliction of emotional distress and harassment by "using loud noise and bright lights to deprive them of needed sleep, and to harass them" causing "both physical discomfort and mental distress as was planned by plaintiff. Said behavior constitutes the tort of outrage." Defendants have taken a distorted approach in this case insisting that it is a SLAPP [Strategic Lawsuit Against Public Participation] and using it to advocate against mountaintop removal mining. In objecting to Plaintiff's discovery requests, Defendants have described their activities on Plaintiff's property in January, 2010, as "a peacefully protest to the

24

devastation being caused by the Plaintiff Coal Company's mountaintop removal operation in southern West Virginia" (Document No. 142, p. 1.) and have evoked the Noerr-Pennington doctrine. As Plaintiff points out, however, the Fourth Circuit has stated that the doctrine "does not apply to discovery." It is also recognized that the doctrine provides no defense "if the purported effort by a party to influence or obtain government action is in reality only an attempt to interfere with the business relationships of the opposing party . . .." Smithfield Foods, Inc., v. United Food and Commercial Workers International Union, 593 F.Supp.2d 840, 844 (E.D.Va. 2008). The undersigned notes that Defendants have identified a doctoral candidate in the Department of Geology and Geography at West Virginia University focusing upon the impacts of mountain top removal on land use and change in the Coal River Valley, West Virginia, as an expert witness and submitted her written report on that topic. This case is not a SLAPP as it arises out of Defendants' unlawful occupation of Plaintiff's property in protest of Plaintiff's mountaintop removal mining practices. It is further not about the legality of mountaintop removal mining practices but the consequences which follow from Defendants' unlawful occupation of Plaintiff's property.

As the parties have taken a farsighted approach to this litigation and maintained it throughout the discovery period, it is appropriate to focus the parties upon the elements of their claims by limiting discovery as authorized under Federal Rule of Civil Procedure 26(b)(2)(C) which provides as follows:

> **(C)** *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive:
>> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

      **(iii)**   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

It is therefore hereby **ORDERED** that Plaintiff's Motion to Compel Discovery (Document No. 82.), Supplemental Motion to Compel Discovery (Document No. 120.), Motion for Protective Order (Document No. 122.) and Motion for Leave to File a Surreply (Document No. 144.) and Defendants' Motion for Protective Order with respect to Plaintiff's Revised First Set of Interrogatories and Requests for Production of Documents (Document No. 102.) and Motion for Protective Order with respect to Plaintiff's Requests for Admissions. (Document No. 105.) are **DENIED**. It is further **ORDERED** that the time for written discovery is closed and will not be reopened. The period of time for depositions is open until January 27, 2011. Defendants are therefore **ORDERED** to sit for their depositions prior to that date. Plaintiff may inquire respecting whether and how the Defendants know each other and planned, convened and executed their plan to protest mountaintop removal mining on its Beetree Surface Mine site in January, 2010. Plaintiff may inquire very narrowly and by leading question only respecting their membership or affiliation with Climate Ground Zero or any other organization advocating against mountaintop removal mining. Plaintiff may not inquire respecting any offices or positions which Defendants may hold in such organization, the organizations' training or recruiting practices, Defendants' acquaintances within those organizations who are not Defendants herein or protests at other mine sites. Of course, Plaintiff may inquire respecting Defendants' counterclaim. In this regard, Defendants are required to provide all information pertaining to their alleged emotional distress including medical evaluations and reports and treatment records. Defendants have indicated that they would like to take the depositions of one of Plaintiff's officers and its expert witness. Defendants shall complete these depositions by January

27, 2011, as well. Defendants' oral request to extend the time by which they may file a motion challenging the jurisdiction of the District Court is **GRANTED**. Defendants may do so by January 27, 2011.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: January 13, 2011.

R. Clarke VanDervort
United States Magistrate Judge